UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY DIXON, | No. C 05-2626 MHP (pr) |
|     Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| TOM CAREY, warden, | |
|     Respondent. | |

## INTRODUCTION

Terry Dixon, a prisoner at the California Men's Colony in San Luis Obispo, filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. This matter is now before the court for consideration of the merits of the habeas petition. For the reasons discussed below, the petition will be denied on the merits and because, upon reconsideration of an earlier ruling, the court concludes that the petition was not timely filed.

## BACKGROUND

In this habeas action, Dixon challenges the 24-year prison sentence he received following a conviction in Alameda County Superior Court of two counts of robbery with numerous sentence enhancements. The legal issues presented in this case do not require reference to the facts of the crimes.

Dixon entered a nolo contendere plea to two charges of robbery. He also admitted that he used a dangerous and deadly weapon during the commission of the offenses, that he suffered several prior strike convictions, which were also serious felonies, and suffered a prior prison term as a result of those convictions. In conformity with the sentence indicated

when the plea was entered, he was sentenced to a total of 24 years in prison on February 27, 2003. Under former California Rule of Court 31, an appeal from criminal judgment entered upon a plea of guilty or nolo contendere had to be filed within sixty days after judgment was rendered and had to be in form of a request for a certificate of probable cause as required by Cal. Penal Code § 1237.5. Dixon's conviction became final on April 28, 2003, because he did not appeal or seek a certificate of probable cause.

He filed state habeas petitions before filing this action. His first state habeas petition was signed on April 7, 2004 and filed in Alameda County Superior Court on April 16, 2004. His last state habeas petition was denied by the California Supreme Court on May 18, 2005. Dixon's federal petition was mailed to this court for filing on June 21, 2005.

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Alameda County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

**EXHAUSTION**

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). The parties do not dispute that state court remedies were exhausted for the claims asserted in the petition.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362 (2000).

Where, as here, there is no reasoned decision from the state court, the federal habeas court conducts "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law. See Plascencia v. Alameda, 467 F.3d 1190, 1198 (9th Cir. 2006).

## DISCUSSION

A.   The Petition Is Untimely

Respondent earlier filed a motion to dismiss the petition as untimely. The court denied the motion, noting that respondent had made a material math error by deleting a year of the limitation period. See Motion To Dismiss, p. 3:10-12). Unfortunately, the court then made its own math error in denying the motion to dismiss (by starting the 1-year limitations period anew after the statutory tolling events ended and not taking into account that more than 11 months of the limitations period had passed before the first state habeas petition was filed). Accordingly, the court reconsiders the order denying the motion to dismiss sua sponte, vacates it, and now determines that the petition was not timely filed. Although the reconsideration is being done sua sponte, petitioner has not been deprived of an opportunity to be heard on the timeliness question. He had an opportunity to (and did) oppose the motion to dismiss when it was filed.

Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest of the date on which: (1) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim

3

could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

The one-year limitations period for Dixon started on April 28, 2003, the date on which the judgment became final when the time expired for him to seek review. See 28 U.S.C. § 2244(d)(1)(A); former Cal. Rule of Court 31; cf. Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999) (direct review period includes the period during which the petitioner could have sought further direct review, regardless of whether he did so). The presumptive deadline for Dixon to file his federal petition was April 28, 2004 (and not April 28, 2003 as urged at page 3 of respondent's motion to dismiss).

The one-year limitations period will be tolled for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Dixon's first state habeas petition was filed on April 16, 2004 and the last was denied on May 18, 2005. The court applies the prisoner mailbox rule to a state habeas petition so that the petition is deemed pending starting on the day the petition is given to prison authorities for forwarding to the state court due to the prisoner's lack of control over mail facilities. See Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003); Anthony v. Cambra, 236 F.3d 568, 574-75 (9th Cir. 2000), cert. denied, 533 U.S. 941 (2001). Giving Dixon the benefit of the doubt, the court will assume he gave his state habeas petition to prison officials for mailing on the date he signed it, i.e., April 7, 2004, and will treat his first state habeas petition as pending as of that date. Even doing so, however, means that there were only 21 days left in the one-year limitations period when his first state habeas petition was deemed filed (on April 7, 2004), so that after his last habeas petition was denied on May 18, 2005, he only had 21days (or until June 8, 2005) to file his federal petition. (Because his last state habeas petition was denied after the California Supreme Court changed the rule regarding finality of orders on collateral review on January 1, 2003, and made clear that its orders denying petitions for writ of habeas corpus within its original jurisdiction are final on filing, see Cal. Rule of Court 8.532(b)(2), the older Ninth Circuit cases of Allen v. Lewis, 295 F.3d 1046, 1046 (9th Cir. 2002) (en banc), and Bunney v. Mitchell, 262 F.3d 973, 974 (9th Cir. 2001), do not apply because they

4

1  relied on the former rule regarding the date on which a habeas denial became final.  Dixon's
2  petition, filed on June 21, 2005, missed the federal habeas deadline by thirteen days.

3     The limitations period is subject to equitable tolling, but Dixon failed to show that
4  there was any extraordinary circumstance beyond his control that prevented him from timely
5  filing his petition.  See Calderon v. United States District Court (Beeler), 128 F.3d 1283,
6  1288 (9th Cir. 1997) (equitable tolling will not be available in most cases because extensions
7  of time should only be granted if extraordinary circumstances beyond prisoner's control make
8  it impossible for him to file petition on time), cert. denied, 523 U.S. 1061, 1099 (1998),
9  overruled in part on other grounds by Calderon v. United States District Court (Kelly), 163
10 F.3d 530 (9th Cir. 1998) (en banc), cert. denied, 526 U.S. 1060 (1999).   He claims he did not
11 realize there was a deadline until he received the motion to dismiss, but mere ignorance is not
12 an extraordinary circumstance beyond the prisoner's control.  Dixon's suggestion in the
13 opposition to the motion to dismiss that the court cannot dismiss without giving him an
14 opportunity to respond is true but irrelevant.  His opposition was the time and place for him
15 to explain why the court should not dismiss his petition as untimely, yet he failed to offer any
16 explanation for his delay in filing.

17    The petition must be rejected as time-barred because it was not filed until thirteen
18 days after the expiration of the limitations period in 28 U.S.C. § 2244(d)(1).  In the interest of
19 completeness, and because the parties briefed the merits of the petition, the court will now
20 consider the legal claims asserted in the amended petition.

21 B.    The Petition Fails On The Merits

22    The amended petition for writ of habeas corpus alleged that Dixon's sentence violated
23 the Sixth and Fourteenth Amendment rights to a fair trial and due process in that he was
24 sentenced to the upper term when the middle term was mandated under California Penal
25 Code § 1170 and sentence enhancements were imposed that were not allowed under
26 California Penal Code § 1170.1.  The court understood Dixon to be asserting that he was
27 given a sentence in excess of that which was allowed under state law and that which was
28 allowed based on his nolo contendere plea, as well as a Blakely claim.  The traverse filed by

Dixon contained numerous other assertions that appear in large part to be cut and pasted from other documents and their application to his case is unknown. One idea mentioned several times in the traverse is of concern, however: his reference to involuntary/unknowing guilty pleas. However, Dixon had not asserted any challenge to the guilty plea as involuntary or unknowing in his original or amended petition and never sought leave to further amend to add such a claim. Nor does it appear that he could: this action was already untimely when filed in 2005, and he made no showing why it would have taken him until 2007 to discover that his guilty plea entered in 2003 was involuntary and/or unknowing.

       The court has a very limited record with which to work in this case, apparently because the sentence was imposed pursuant to a plea agreement and no appeal was taken. The record does not include a transcript of the entry of the nolo contendere plea, does not include any document evidencing any agreement as to the sentence to be imposed, and does not even have the original charging document (i.e., indictment, information or complaint). The record appears sufficient, however, to resolve Dixon's two legal claims

       1.      <u>Calculation Of Dixon's Sentence</u>

       The plea agreement included a negotiated or indicated sentence. <u>See</u> Resp. Exh. A, RT 1. Neither party submitted the actual plea agreement or change of plea colloquy, so it cannot be determined with certainty that the agreement was followed. The only evidence suggestive of whether the agreed-upon sentence was imposed is the fact that the transcript of the sentencing proceeding contains no objection – from defendant, defendant's counsel or the prosecutor – to the sentence at the time it was imposed and Dixon waited almost a full year to file his first court challenge to the sentence. The acquiescence at the time of imposition and the absence of a prompt court challenge suggest the sentence imposed was the one to which the parties agreed.

       The judge explained how he calculated the sentence he imposed, and the abstract of judgment is consistent with his explanation. <u>See</u> Resp. Exh. A, RT 1-3; Exh. B. The record shows the sentence was imposed thusly:

6

1 Dixon received 5 years on the second degree robbery in count 1. The judge selected
2 the upper term sentence for the offense. See Cal. Penal Code § 211, § 213.

3 The 5-year term was doubled to 10 years because of the third prior conviction, which
4 was a strike prior and had not been dismissed by the judge. See Cal. Penal Code § 667(e)(1).

5 A 1-year term was added for the gun use enhancement alleged and admitted by Dixon
6 in connection with the robbery. See Cal. Penal Code § 12022. That brought the sentence up
7 to 11 years.

8 Dixon received a consecutive term of 2 years for the second degree robbery in count
9 2. That was 1/3 the midterm sentence of 3 years, that was doubled because of the prior strike
10 conviction. See Cal. Penal Code §§ 667(e)(1), 1170.1.

11 Dixon received an additional ten years for his prior serious felony convictions. This
12 consisted of five years for the third prior conviction alleged, see Cal. Penal Code § 667(a)(1),
13 plus five years for the fifth, sixth and seventh priors that had arisen from the same case.

14 Dixon received an additional year for the first prior conviction because that prior was
15 alleged and admitted to be a prior conviction had resulted in a prison term for him. See Cal.
16 Penal Code § 667.5(b).

17     2.    <u>The Sentence Did Not Exceed That Allowed By State Law</u>

18 A person has a fundamental right not to be subjected to a sentence that exceeds that
19 allowed by state law. The constitutional guarantee of due process is fully applicable at
20 sentencing. See Gardner v. Florida, 430 U.S. 349, 358 (1977) (Stevens, J.)  State
21 sentencing courts must be accorded wide latitude in their decisions as to punishment and a
22 federal court generally will not review a state sentence within statutory limits. See Walker v.
23 Endell, 850 F.2d 470, 476 (9th Cir. 1987), cert. denied, 488 U.S. 926, 981 (1988). A state
24 sentence may, however, violate due process if it is in excess of that allowed by state law. See
25 id.; see also Marzano v. Kincheloe, 915 F.2d 549, 552 (9th Cir. 1990) (plea of guilty does not
26 permit state to impose sentence in excess of state law despite agreement of defendant to
27 sentence).

28 Dixon contends that he "was sentenced to the upper term of five years, where middle

7

term is mandated under 1170, P.C." Amended Petition, p. 6. California Penal Code § 1170(b) states that "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate terms shall rest within the sound discretion of the court." The requirement that the judge select from one of three terms does not mean that the judge must select the middle term; indeed, the same subdivsion directs the court to "select the term which, in the court's discretion, best serves the interests of justice." Cal. Penal Code § 1170(b). There does not appear to be any misapplication of § 1170(b) in Dixon's case, as the judge did select from the three terms, choosing the upper term for the first robbery conviction and the middle term for the second robbery conviction.

Dixon also contends that the court "imposed enhancements unlawfully in violation of 1170.1." Amended Petition, p. 6. California Penal Code § 1170.1 provides for, among other things, the calculation of the sentence when a person is convicted of two or more felonies and a consecutive term is imposed under § 1170. Section 1170.1(a) provides, in part: "The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any term imposed for applicable specific enhancements. The subordinate term for each of the consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, and *shall include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses.*" Cal. Penal Code § 1170.1(a) (emphasis added). It appears that Dixon is claiming that his sentence violated the italicized clause of § 1170.1(a) because he received the two full enhancements of 5 years each on the subordinate term, instead of two enhancements of 1/3 of the 5-year term. The problem for him is that the introductory phrase of § 1170.1(a) states: "Except as otherwise provided by law. . ." The enhancements for Dixon on the subordinate term were imposed under § 667(a)(1) and not under § 1170.1, so that the final clause of § 1170.1(a) does not apply to his case. See Resp. Exh. B, abstract of judgment, § 3. In short, the imposition of § 667's habitual offender enhancements meant that § 1170.1(a) did not apply to Dixon's case.

Dixon has not shown that the sentence he received was in excess of that allowed by state law.  And he presented absolutely no evidence that the sentence deviated from the plea agreement.  He is not entitled to the writ on this claim.

### 3. Blakely Does Not Apply Retroactively

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a trial by jury.  U.S. Const. amend. VI.  This right to a jury trial has been made applicable to state criminal proceedings via the Fourteenth Amendment.  Duncan v. Louisiana, 391 U.S. 145, 149-50 (1968).  The Supreme Court's Sixth Amendment jurisprudence was significantly expanded by Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny, which extended a defendant's right to trial by jury to the fact finding used to make enhanced sentencing determinations as well as the actual elements of the crime.  "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Apprendi v. New Jersey, 530 U.S. 466, 488-90 (2000).  The "statutory maximum" for Apprendi purposes is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant; that is, the relevant "statutory maximum" is not the sentence the judge could impose after finding additional facts, but rather is the maximum he or she could impose without any additional findings.  Blakely v. Washington, 542 U.S. 296, 303-04  (2004).

In Cunningham v. California, 127 S. Ct. 856 (2007), the Court held that California's determinate sentencing law ("DSL") violated the Sixth Amendment because it allowed the sentencing court to impose an elevated sentence based on aggravating facts that it found to exist by a preponderance of the evidence.  Id. at 860, 870-71.  The sentencing court was directed under the DSL to start with a "middle term" and then move to an "upper term" only if it found aggravating factual circumstances beyond the elements of the charged offense.  Id. at 862.  Concluding that the middle term was the relevant statutory maximum, and noting that aggravating facts were found by a judge and not the jury, the Supreme Court held that the California sentencing law violated the rule set out in Apprendi.  Id. at 871.  Although the

1  DSL gave judges broad discretion to identify aggravating factors, this discretion did not
2  make the upper term the statutory maximum because the jury verdict alone did not authorize
3  the sentence and judges did not have the discretion to choose the upper term unless it was
4  justified by additional facts. Id. at 868-69. Cunningham essentially applied Blakely to
5  California's sentencing scheme.

   Neither Blakely nor Cunningham was decided before his conviction became final.
7  The Supreme Court has not made Blakely retroactive to cases on collateral review of
8  convictions that became final before Blakely was decided. Schardt v. Payne, 414 F.3d 1025,
9  1036 (9th Cir. 2004). In Schardt, the petitioner's conviction became final on December 22,
10 2000, after Apprendi was decided on June 26, 2000, but before Blakely was announced on
11 June 24, 2004. The Ninth Circuit found that although petitioner's sentence violated the Sixth
12 Amendment's right to a jury under Blakely, habeas relief was not available because the
13 Blakely decision announced a "new rule" that does not apply retroactively to cases on
14 collateral review. See id. at 1034 (citing Teague v. Lane, 489 U.S. 288 (1989)). Similarly,
15 Dixon's conviction here became final in April 2003, more than a year before Blakely was
16 decided. Thus, as in Schardt, Dixon is not entitled to relief on his Sixth Amendment claim
17 because the rule in Blakely does not apply retroactively to this case. Cunningham, which was
18 essentially a California-specific application of Blakely, also has not been made retroactive to
19 cases on collateral review. Dixon's claim for relief under Blakely is DENIED.

## CONCLUSION

21 The petition for writ of habeas corpus is DENIED on the merits and because it was
22 not timely filed. The clerk shall close the file.
23 IT IS SO ORDERED.
24 DATED: March 24 , 2008

Marilyn Hall Patel
United States District Judge